UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FIRST AMERICAN TITLE INSURANCE CO.,

                Plaintiff,                              REPORT AND
                                                                                          RECOMMENDATION
       -against-                              23 CV 6462 (NRM)(RML)

RAM ABSTRACT, LTD., EIVAZOV, LLC,
VAYSBAUM & KAZAKEVICH, P.C.,
ALEX VAYSBAUM, ESQ., JOHN DOE #1 through
JOHN DOE #10, the last ten names being fictious
and unknown to plaintiff,

                Defendants,
------------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        By order dated February 12, 2024, the Honorable Nina R. Morrison, United States District Judge, referred plaintiff's motion for default judgment against defendant Eivazov, LLC to me for report and recommendation. For the reasons stated below, I respectfully recommend that the motion be granted in part and denied in part.

## BACKGROUND AND FACTS

        Plaintiff First American Title Insurance Company ("First American" or "plaintiff") commenced this action on August 29, 2023 against Ram Abstract, Ltd. ("Ram"); Eivazov, LLC ("Seller"); Vaysbaum & Kazakevich, P.C. and Alex Vaysbaum, Esq. (the "Vaysbaum parties"), and John Doe Nos. 1-10 ("John Doe defendants") (collectively, "defendants") asserting claims for breach of contract, contractual indemnification, negligence, negligent misrepresentation, professional malpractice, common law indemnification, fraud, conversion, misappropriation, constructive trust, and unjust enrichment. (See generally Complaint, dated Aug. 29, 2023 ("Compl."), Dkt. No. 1.) Plaintiff is a title insurance company

organized under the laws of Nebraska with a principal place of business in California. (Id. ¶ 4.) Ram is a title insurance agency operating as a domestic business corporation organized under the laws of New York, with its principal place of business in Bellmore, New York. (Id. ¶ 5.) Seller is a New York limited liability company with its principal place of business in Brooklyn, New York. (Id. ¶ 6.) The Vaysbaum Firm is a New York domestic professional service corporation organized under the laws of New York, with its principal place of business in Brooklyn, New York. (Id. ¶ 7.) Defendant Vaysbaum is an attorney licensed to practice in New York and a partner at the Vaysbaum Firm. (Id. ¶ 8.) The John Doe defendants are persons or entities being fictitious and unknown to plaintiff at the present time, who, upon information and belief, engaged in wrongful conduct associated with the transaction that is the subject of this action. (Id. ¶ 9.)

Plaintiff seeks to recover a $456,943.74 loss incurred under a title insurance policy issued on its behalf by Ram in connection with a May 6, 2022 real estate sale transaction ("the May 6 transaction"). (Id. ¶ 1.) The title policy was issued pursuant to a Limited Agency Agreement, dated July 9, 2012, and as amended thereafter, in which Ram agreed to indemnify First American for, among other things, any losses suffered as a result of: (i) any closing services Ram agrees to perform, (ii) Ram's failure to comply with the terms of the Limited Agency Agreement or any of First American's rules or underwriting standards, or (iii) Ram's negligent acts or omissions. (Id.) Plaintiff alleges that all three of these indemnification provisions were triggered when Ram failed to verify the authenticity of a mortgage loan payoff statement that it received for the May 6 transaction from Seller and its closing counsel, the Vaysbaum Parties, before allowing a wire of $363,700.39 to be sent to unknown third parties that stole the funds. (Id.) Because Ram refused to replace the funds it had misdirected, plaintiff alleges that it

suffered a loss when it honored its policy obligation to its insured and transmitted $456.943.74 to satisfy the two mortgages that remained, because the amount due had increased due to the accrual of interest and other sums after the date of the closing. (Id.)

## I. The May 6, 2022 Transaction

Plaintiff alleges that Seller entered into a Residential Contract of Sale with Nestor Omar Lozada Xochimitl and Christian Ezequiel Lozada Xochimitl ("Purchasers") in March 2022 in which Seller agreed to sell a residential real property located at 2742 East 12th Street, Brooklyn, New York (the "Property") to Purchasers for $650,000. (Id. ¶ 26.) By Bargain and Sale Deed with Covenant Against Grantor's Acts, dated May 6, 2022, Seller sold and conveyed the Property to Purchasers. (Id. ¶ 27.) The purchase was financed with a purchase money mortgage loan on that date, in the amount of $617,500, which was advanced by American Neighborhood Mortgage Acceptance Company ("Lender") to Purchasers. (Id. ¶ 29.) In advance of the closing, Ram, the title agent for the closing, obtained a title search that identified two mortgages executed by Seller that encumbered the Property: (1) a Commercial Mortgage, Security Agreement and Fixture Filing, dated February 3, 2022, and recorded on March 2, 2022, as CRFN 2022000093403, which secured a $354,450 loan from FRC VTX Assets LLC ("Flatiron"); and (2) a Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement, dated February 3, 2022, and recorded on March 2, 2022, as CRFN 2022000093405, which secured an additional loan in the principal amount of $62,700 from Flatiron (together, the "Seller's Mortgages"). (Id. ¶ 31.)

By emails exchanged between April 29 and May 3, 2022, Seller requested that Flatiron provide a payoff statement for Seller's Mortgages. (Id. ¶ 32.)[1] In response, Flatiron supplied a payoff statement by email, dated May 3, 2022, which reflected that $364,406.43 was owed as of May 5, 2022, and directed payment to be made by wire to a JPMorgan Chase bank account held by Flatiron Realty Capital LLC (the "True Payoff"). (Id. ¶ 34.) The True Payoff advised: "[b]efore initiating any wire to Lender, sender is required to verbally confirm these wire instructions with Director of Loan Servicing, Conor McAuley Phone Number: 516-749-5329." (Id. ¶ 35.) On May 4, 2022, Seller and its counsel, the Vaysbaum Parties, received a second email with the subject line: "Updated payoff – EIVAZOV LLC." (Id. ¶ 38.) This email was transmitted from a different email account, payoff@flatlronrealtycapital.com, that had a different domain name in which the lower-case "i" in "flatiron" was replaced with a lower-case "l" (the "Fake Email Account"). (Id.) The May 4 email purported to copy "Conor McAuley," but utilized the fake email address "cmcauley@flatlronrealtycapital.com." (Id. ¶ 39.)

The updated payoff (the "Fraudulent Payoff") reduced the payoff amount to $363,306.43 and attributed the difference to the unexplained deletion of certain fees. (Id. ¶ 40.) Additionally, although the Fraudulent Payoff purported to supersede the True Payoff that had been transmitted the previous day, it continued to reflect that it was "Version #: 1." (Id. ¶ 41.) The Fraudulent Payoff also provided new wire instructions for a different account at JPMorgan Chase held by "Impact Direct Int." – a company with no connection to the closing – rather than Flatiron Realty Capital LLC. (Id. ¶ 42.) The Fraudulent Payoff was also modified to reflect: "[b]efore initiating any wire to Lender, sender is required to verbally confirm these wire

---

[1] The emails were exchanged with two Flatiron employees: (i) Conor McAuley, with an email address of CM@flatironrealtycapital.com, and (ii) Daniel Kaziev, with an email address of DK@flatironrealtycapital.com. (Id. ¶ 33.)

4

instructions with Payoff Department by Phone Number: 516-742-0060 and fax the wire reference or confirmation to 518-836-0617 [sic]." (Id. ¶ 43.) This new telephone number was inconsistent with Flatiron's website and Mr. McAuley's email signature. (Id.)

To induce the parties to proceed with the closing, Seller also executed a Title Affidavit affirming that "[n]othing has been done to date of closing to encumber or cause a lien to be placed on the premises," and that Seller "make[s] this affidavit to induce Ram Abstract, Ltd. and First American company to insure title to the above-mentioned premises, knowing that said title company will rely on same." (Id. ¶ 50.) At the closing, Ram's title closer was provided the Fraudulent Payoff and wired $363,700.39 (the "Diverted Funds") to a bogus bank account. (Id. ¶ 48.) As a result, Seller's Mortgages were not paid off. After disbursing the sale proceeds, Ram omitted the Seller's Mortgages as exceptions to coverage and issued an Owner's Policy of Title Insurance to Purchasers in the amount of $650,000 and a Loan Policy of Title Insurance to the Lender in the amount of $617,500 (collectively, the "Policies"). (Id. ¶ 51.) Flatiron later sold Seller's Mortgages, and Shellpoint Mortgage Servicing ("Shellpoint") replaced Flatiron as the new servicer. (Id. ¶ 52.)

## II.     The Claim

By letter dated May 27, 2022, Purchasers' closing counsel transmitted a notice of claim to First American on behalf of Purchasers in which he advised that: "[t]he Seller paid off a mortgage of $363,306.43, payoff letter enclosed for reference. Unfortunately, the payoff was wired to a fraudulent account, so the mortgage was not Satisfied, and my clients['s] title is therefore not clear." (Id. ¶ 53.) By letter dated October 12, 2022, plaintiff demanded that Seller take any and all action necessary to satisfy Seller's Mortgages in full, absent which, First American would honor its obligation to do so under the Policies and would seek to recover any

5

damages suffered.  (Id. ¶ 54.)  Seller did not respond, comply with plaintiff's demand, or take any other action to address Seller's Mortgages.  (Id. ¶ 57.)  By letter dated May 19, 2023, First American transmitted a check to Shellpoint in the amount of $456,943.74 (the actual payoff amount as of that date) representing full and final satisfaction of Seller's Mortgages.  (Id. ¶ 59.)  The default interest has continued to run on Seller's Mortgages, increasing the damages, in large part because First American had to repeatedly contact Seller and/or its then-counsel to determine to whom Flatiron assigned Seller's Mortgages and to obtain a payoff for the same.  (Declaration of Jaimee Katz Sussner, Esq., dated Jan. 31, 2024, Dkt. No. 28-1, ¶ 17.)  Nonetheless, Seller has failed to remit any portion of these funds to First American.  (Declaration of Kristine Doherty, Esq., dated Jan. 29, 2024; Dkt. No. 28-19, ¶ 4.)

On September 7, 2023, Seller was served via the New York Secretary of State pursuant to Section 303 of the New York Limited Liability Company Law.  (See Affidavit of Service of Kerry Gunner, sworn to Sept. 7, 2023, Dkt. No. 8.)  Seller has failed to answer, move, or otherwise respond to the Complaint.  On October 31, 2023, plaintiff filed a Request for Certificate of Default against Seller.  (Request for Certificate of Default, dated Oct. 31, 2023, Dkt. No. 19.)  The Clerk of Court entered Seller's default on November 6, 2023.  (Certificate of Default, dated Nov. 6, 2023, Dkt. No. 20.)  Plaintiff filed the instant motion for default judgment against Seller on January 31, 2024.  (Motion for Default Judgment, dated Jan. 31, 2024, Dkt. No. 28.)  Judge Morrison referred plaintiff's motion to me for report and recommendation on February 12, 2024.

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for plaintiffs to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative relief

6

is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. Here, as explained above, plaintiff has demonstrated that it properly served Seller with the summons and complaint. Plaintiff has also demonstrated that it served the Motion for Default Judgment and accompanying submissions on Seller in compliance with Local Rule 55.2(c). (See Affirmation of Service, dated Feb. 2, 2024, Dkt. No. 29.)

### I. Liability

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted); Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas, 509 F. App'x 54, 56 (2d Cir. 2013) ("A default, then, only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v.

7

Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law." Id. Plaintiff moves for default judgment on its breach of contract, contractual indemnification, negligence, and negligent misrepresentation claims against Seller. I will address whether plaintiff's allegations establish Seller's liability as to each claim as a matter of law.

    a. Breach of Contract

Plaintiff alleges that Seller breached the obligations required of it under the Title Affidavit. (Compl. ¶¶ 72-75.) "To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (cleaned up). "Where, as here, a court is determining whether a plaintiff has adequately stated a cause of action for breach of contract, all contractual ambiguities should be resolved in favor of the plaintiff." Gerritsen v. Glob Trading, Inc., No. 06 CV 3756, 2009 WL 262057, at *4 (E.D.N.Y. Feb. 4, 2009) (citing Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005)).

Here, plaintiff alleges that the Title Affidavit constitutes a valid and binding contract between Seller and First American. (Compl. ¶ 72; see also Title Affidavit, dated May 6, 2022, attached as Ex. 10 to the Compl., Dkt. No. 28-11.) Thus, plaintiff has alleged the first element of a breach of contract claim – the formation of a contract between the parties. See, e.g., Cap. Inv. PTY, LLC v. Onestone Cap., LLC, No. 23 CV 4487, 2023 WL 7004164, at *2 (S.D.N.Y. Oct. 24, 2023) (finding that plaintiff's allegation that the parties formed a contract by entering into a loan agreement was sufficient to establish the first element of a breach of contract claim). The Title Affidavit indicates that Seller made the affidavit "to induce Ram Abstract, Ltd.

8

and First American company to insure title to the above mentioned premises, knowing that said title company will rely on same." (Title Affidavit.)  Plaintiff performed under the Title Affidavit by insuring title to the Property through Ram, its policy-issuing agent.  (See Compl. ¶¶ 1, 13, 46-51; Memorandum of Law in Support of the Motion for Default Judgment, dated Jan. 31, 2024 ("Pl.'s Mem."), Dkt. No. 28-23 at 5.)  Accordingly, plaintiff has established the second element of a breach of contract claim.

Plaintiff further alleges that Seller falsely affirmed in the Title Affidavit that "[n]othing has been done to date of closing to encumber or cause a lien to be placed on the premises" and that Seller breached the Title Affidavit through its failure to satisfy and discharge the Seller's Mortgages.  (Compl. ¶ 74.)  Plaintiff has therefore established Seller's failure to perform under the Title Affidavit.  Finally, plaintiff alleges that it has suffered damages in an amount equal to all losses suffered as a result of Seller's breach, together with attorney's fees and costs incurred in connection therewith.  (Pl.'s Mem. at 8; Compl. ¶¶ 72-75.)  Therefore, plaintiff has adequately pleaded all elements of its breach of contract claim against Seller.  Elevation Health, LLC v. Wong, No. 22 CV 10308, 2023 WL 3842256, at *2 (S.D.N.Y. June 6, 2023) (finding that plaintiff's allegation that it suffered damages as a result of defendant's breach was sufficient to establish the fourth element of a breach of contract claim).  I respectfully recommend that the motion for default judgment be granted against Seller for breach of contract.

b. Contractual Indemnification

Plaintiff alleges that Seller breached its contractual obligation to indemnify plaintiff.  (Compl. ¶ 78.)  "Under New York law, the right to indemnification operates to shift liability from one party to another and arises from either an express or implied contract." Haraden Motorcar Corp. v. Bonarrigo, No. 19 CV 1079, 2021 WL 4906989, at *5 (N.D.N.Y.

9

Oct. 21, 2021) (citing McDermott v. City of New York, 50 N.Y.2d 211, 216 (N.Y. 1980)). Indemnification provisions are "strictly construed." Hooper Assocs., Ltd. v. AGS Computers, Inc., 548 N.E.2d 903, 905 (N.Y. 1989); see also Goodman v. Port Auth. of New York & New Jersey, 850 F. Supp. 2d 363, 378 (S.D.N.Y. 2012) ("While a contract is interpreted to effectuate the parties' intentions as expressed in unequivocal language, indemnification agreements are strictly construed to avoid reading in a duty which the parties did not intend to be assumed.") (citing Weissman v. Sinorm Deli, 669 N.E.2d 242 (N.Y. 1996)).

When construing contractual indemnification provisions, "[a] party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances." De Souza v. Empire Transit Mix, Inc., 63 N.Y.S.3d 473 (2d Dep't 2017) (citation omitted). Under New York law, "an implied right to indemnification may be based on the special nature of a contractual relationship between parties." Peoples' Democratic Republic of Yemen v. Goodpasture, Inc., 782 F.2d 346, 351 (2d Cir. 1986). "This has been called an 'implied contract theory' of indemnity . . . or an 'implied in fact' indemnity." Id. (internal citations omitted). "The burden of establishing an implied agreement to indemnify is a heavy one, especially in business relationships where parties are free to negotiate for express indemnification clauses." City of New York v. Black & Veatch, No. 95 CV 1299, 1997 WL 624985, at *10 (S.D.N.Y. Oct. 6, 1997) (citations omitted).

To support its contractual indemnification claim, plaintiff argues that Seller acknowledged that it "make[s] this affidavit . . . to induce . . . First American . . . to insure title to the above-mentioned premises, knowing that said title company will rely on same" and that by failing to convey clear title and ignoring plaintiff's demands to do so, Seller breached its

10

contractual obligation to indemnify plaintiff for all losses suffered. (See Pl.'s Mem. at 9; Compl. ¶¶ 77-79; Title Affidavit.) The Title Affidavit relied upon by plaintiff does not contain a clear indemnification provision[2] and plaintiff does not allege that the contractual relationship between itself and Seller was of a special nature that would warrant a finding of an implied right to indemnification. Therefore, I find that plaintiff has not established Seller's liability for contractual indemnification and recommend that the motion for default judgment be denied as to this claim. See Hayden v. Hevesi, No. 05 CV 294, 2007 WL 496369, at *4 (W.D.N.Y. Feb. 12, 2007) ("under New York law, indemnification is available only where there is evidence of either an express or implied agreement between the parties."); Black & Veatch, 1997 WL 624985, at *11 ("a party must show facts demonstrating that there is something 'special' about the contractual relationship that would warrant implying in fact a contract for indemnification."); see also Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth., 693 F.2d 1, 2-3 (1st Cir. 1982) ("[A] contractual right to indemnification will only be applied when there are unique special factors demonstrating that the parties intended that the would-be indemnitor bear the ultimate responsibility for the plaintiff's safety, or when there is a generally recognized special relationship between the parties.") (citations omitted).

    c.  Common Law & Tort Claims

Plaintiff asserts claims of common law indemnification, negligence, and negligent misrepresentation against Seller. (See Compl. ¶¶ 81-86, 88-97; Pl.'s Mem. at 10-11.) "Under

---

[2] The only party that plaintiff alleges explicitly agreed to indemnify it is Ram. (See Compl. ¶ 1. ("Ram agreed to indemnify First American for, among other things, any losses suffered as a result of: (i) any closing services Ram agrees to perform, (ii) Ram's failure to comply with the terms of the Limited Agency Agreement or any of First American's rules or underwriting standards, or (iii) Ram's negligent acts or omissions. All three of these indemnification provisions were triggered when Ram failed to verify the authenticity of a mortgage loan payoff statement that it received for this transaction from Seller . . . .").)

11

New York law, where there is a breach of contract claim and a valid, enforceable contract is found, a court will not recognize separate causes of action for . . . common law indemnity, [or] gross negligence." Maspeth Fed. Sav. & Loan Ass'n v. Fid. Info. Servs., LLC, 275 F. Supp. 3d 411, 418 (E.D.N.Y. 2017) (quoting PNC Bank, N.A. v. Wolters Kluwer Fin. Servs., Inc., 73 F. Supp. 3d 358, 370 (S.D.N.Y. 2014)) (collecting cases); see also Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC, 692 F.3d 42, 58 (2d Cir. 2012) ("Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated.").

"To be entitled to common law indemnification, a party must show that: (1) it has been held vicariously liable without proof of any negligence or actual supervision on its part; and (2) the proposed indemnitor was either negligent or exercised actual supervision or control over the injury-producing work." AVA Realty Ithaca, LLC v. Griffin, 652 F. Supp. 3d 255, 265 (N.D.N.Y. 2023). Here, plaintiff alleges that it was obligated to pay $456,943.74 to satisfy and discharge Seller's Mortgages pursuant to its policy obligations to Purchasers and that common law notions of equity and fairness require Seller to indemnify plaintiff for all losses suffered because it was Seller's actions and inactions that caused the loss. (Pl.'s Mem. at 12.) Furthermore, plaintiff alleges that Seller was negligent by way of its failure to obtain a properly issued payoff statement and to ensure that the correct payoff amount was paid to and received by Flatiron. (See Compl. ¶ 81; Pl.'s Mem. at 10-11.) I find that plaintiff has not alleged that Seller violated a legal duty independent from the contract itself; therefore, the claim for common law indemnification is duplicative of plaintiff's breach of contract claim. Accordingly, I recommend that default judgment be denied against Seller as to the claim of common law indemnification and that the claim be dismissed as duplicative.

12

"Under New York law, the elements of a negligence claim are: (i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." Calix v. United States, No. 23 CV 7710, 2024 WL 3263361, at *3 (2d Cir. July 2, 2024) (quoting Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002)). As discussed above, "[a] tort claim cannot be sustained if it do[es] no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached." BlackRock Allocation Target Shares: Series S. Portfolio v. Wells Fargo Bank, Nat'l Ass'n, 247 F. Supp. 3d 377, 394-95 (S.D.N.Y. 2017) (internal quotation marks and citations omitted); see also Pac. Life Ins. Co. v. US Bank Nat'l Ass'n, 636 F. Supp. 3d 366, 438 (S.D.N.Y. 2022) ("Under New York's economic loss doctrine, '[a] plaintiff cannot seek damages by bringing a tort claim when the injury alleged is primarily the result of economic injury for which a breach of contract claim is available.'") (internal quotation marks and citation omitted); Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 172 F. Supp. 3d 700, 717 (S.D.N.Y. 2016) ("it is well established that if the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative.") (internal quotation marks and citation omitted).

Plaintiff alleges that Seller "voluntarily undertook an obligation to First American, among other things, to obtain a properly issued payoff statement from Flatiron and to ensure that the correct payoff amount was paid to and received by Flatiron." (Pl.'s Mem. at 10; Compl. ¶ 81.) As a result of this obligation, plaintiff alleges that Seller owed a duty to it to supply a valid payoff statement. (Pl.'s Mem. at 10; Compl. ¶ 82.) Furthermore, plaintiff asserts that Seller's actions and representations were designed to induce, and did induce, Ram to

13

advance funds to third parties without investigating, authenticating, or verifying the legitimacy of the Fraudulent Payoff Statement. (Compl. ¶ 84.) Thus, the sole basis of plaintiff's general negligence claim is Seller's alleged breach of its contractual obligations. As such, "the claim is precluded as duplicative." Royal Park Invs. SA/NV v. Bank of New York Mellon as Tr., No. 14 CV 6502, 2016 WL 899320, at *7 (S.D.N.Y. Mar. 2, 2016); see also Waverly Props., LLC v. KMG Waverly, LLC, 824 F. Supp. 2d 547, 564 (S.D.N.Y. 2011) ("In order to distinguish a tort claim from a breach of contract claim, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation [or other tortious conduct] collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation [or other tortious conduct] and unrecoverable as contract damages.") (internal quotation marks and citation omitted). I therefore recommend that default judgment as to plaintiff's claim of negligence against Seller be denied and that the claim be dismissed as duplicative.

Under New York law, a negligent misrepresentation claim requires a plaintiff to show "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc., 557 F. Supp. 3d 381, 392 (E.D.N.Y. 2021) (quoting ICD Cap., LLC v. CodeSmart Holdings, Inc., 842 F. App'x 705, 706 (2d Cir. 2021)). Nevertheless, "[i]f the duty between the parties arose out of a contract, such that the contract required a correct representation, then any misrepresentation must be pled as a breach of contract, not as a tort claim for negligent misrepresentation." Madison Cap. Co., LLC v. Alasia, LLC, 615 F. Supp. 2d 233, 240 (S.D.N.Y. 2009) (citing PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co., No. 99

14

CV 3794, 2003 WL 22118977, at *26 (S.D.N.Y. Sept. 11, 2003) (applying the "well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract has been violated")); see also TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 91 (2d Cir. 2005) ("A duty to disclose separate from the duty to perform under the contract may arise where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.") (internal quotation marks and citation omitted); U.S. Bank Nat'l Ass'n v. BFPRU I, LLC, 230 F. Supp. 3d 253, 260 (S.D.N.Y. 2017) ("A duty to disclose separate from a contractual duty may also arise if the defendants made a partial or ambiguous statement that required additional disclosure in order to avoid misleading the other party.").

In support of its negligent misrepresentation claim against Seller, plaintiff alleges that Seller represented to Purchasers, their counsel, and Ram that the Fraudulent Payoff Statement was valid and had been issued by and received from Flatiron. (Compl. ¶ 88.) Furthermore, Seller represented to Purchasers, their counsel, and Ram that if $364,406.63 was wired to the account identified in the Fraudulent Payoff Statement, Seller's Mortgages would be satisfied and discharged. (Id. ¶ 89.) At or about the closing, Seller executed the Title Affidavit, affirming that nothing had been done to encumber or cause a lien to be placed on the premises. (Id. ¶ 90.) Based on its undertaking and express representations to Purchasers, their counsel, and Ram, plaintiff alleges that Seller created a special relationship with Ram and First American that endowed it with a duty to impart correct information regarding the Seller's Mortgages. (Id. ¶ 91.) Purchasers, their counsel, and Ram relied on Seller's representations that the Fraudulent Payoff Statement was valid, and in reliance thereon, Ram transferred the Diverted Funds. (Id. ¶ 92.) Plaintiff further alleges that Purchasers, their counsel, and Ram relied on Seller's

15

representations in the Title Affidavit and in reliance thereon Ram transferred the Diverted Funds. (Id. ¶ 93.)  Plaintiff alleges that Seller's representations related to the Fraudulent Payoff Statement and the Title Affidavit were negligently false.  (Id. ¶¶ 94, 95.)

Plaintiff's use of the words "special relationship" in support of its negligent misrepresentation claim against Seller does not save this claim from being deemed duplicative of the breach of contract claim.  The contract between plaintiff and Seller required Seller to provide correct information, specifically that "[n]othing has been done to date of closing to encumber or cause a lien to be placed on the premises."  (Title Affidavit.)  Plaintiff alleges that Purchasers, their counsel, and Ram relied on Seller's representations that the Fraudulent Payoff Statement was valid, causing Ram to transfer the Diverted Funds.  (Compl. ¶¶ 92-95.)  These allegations do not impart a separate legal duty on Seller to plaintiff; rather, they appear to support a finding that Seller owed a separate duty to provide correct information outside of the Title Affidavit to Purchasers, their counsel, and Ram.  See Kitchen Winners NY Inc. v. Rock Fintek LLC, 668 F. Supp. 3d 263, 295 (S.D.N.Y. 2023) ("Under the economic loss rule, damages that arise from the failure of a party to perform pursuant to a bargained-for agreement are recoverable in contract, and not in tort, unless a legal duty independent of the contract itself has been violated.") (internal quotation marks and citations omitted); MVP Health Plan, Inc. v. OptumInsight, Inc., 765 F. App'x 615, 617 (2d Cir. 2019) (upholding dismissal of tort claims that "merely assert violations of duties indivisible from the contractual obligations"); Volt Elec. NYC Corp. v. A.M.E., Inc., 586 F. Supp. 3d 262, 298 (S.D.N.Y. 2022) (dismissing negligence claims where "alleged conduct underlying . . . contract and tort claims is identical, or virtually so"); Waverly Props., LLC, 824 F. Supp. 2d at 565 (sustaining claim where plaintiff alleged defendants had "independent legal duty," separate from contractual obligation, to comply with municipal codes).  I therefore

16

recommend that default judgment be denied as to plaintiff's negligent misrepresentation claim against Seller and dismissed as duplicative.

## II. Damages

Once the court determines that a defaulting defendant is liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff to establish [his or her] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

Plaintiff requests that the court enter partial final judgment against Seller pursuant to Federal Rule of Civil Procedure 54(b) and award it $456,943.74, the amount it was required to pay to satisfy Seller's Mortgages. (Pl.'s Mem. at 12-13.) "Rule 54(b) authorizes a district court to enter partial final judgment when three requirements have been satisfied: (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express[ ] determin[ation] that there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action." Linde v. Arab Bank, PLC, 882 F.3d 314, 322-23 (2d Cir. 2018) (internal quotation marks and citations omitted).

However, in cases where some but not all defendants have defaulted, "'courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination

17

of damages would pose the prospect of inconsistent judgments.'" Harvey v. Home Savers Consulting Corp., No. 07 CV 2645, 2008 WL 724152, at *1 (E.D.N.Y. Mar. 17, 2008) (quoting Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 978 (S.D.N.Y. 1992)); see also M&T Cap. & Leasing Corp. v. Athens Inc., No. 22 CV 1353, 2023 WL 2727523, at *3 (D. Conn. Mar. 31, 2023) ("courts should refrain from granting partial default judgments when there is a risk of inconsistent judgments between defaulting and answering defendants") (discussing the standard set forth in Frow v. De La Vega, 82 U.S. 552, 553 (1872)).

In the case at hand, the non-defaulting defendants are still active in this case. Plaintiff seeks to recover the same relief against the non-defaulting defendants as against Seller, namely "compensatory damages in an amount to be determined at trial in an amount not less than $456,943.74, together with consequential, incidental and/or special damages, plus pre- and post-judgment interest" and legal fees and costs. (See Compl. at 13-28.) It is premature to enter a judgment that would award plaintiff specified amounts from Seller before liability and relief is addressed with respect to the non-defaulting defendants. Therefore, I respectfully recommend that the damages inquiry be deferred until it can be handled concurrently with the issue of damages against the remaining defendants.

## CONCLUSION

For the reasons explained above, I respectfully recommend that plaintiff's motion for partial default judgment against Seller as to its breach of contract claim be granted. I further recommend that plaintiff's motion for default judgment as to the remaining claims against Seller be denied and that plaintiff's claims for common law indemnification, negligence, and negligent misrepresentation be dismissed as duplicative of plaintiff's breach of contract claim. Finally, I recommend that the issue of damages be deferred until plaintiff's claims against the non-

18

defaulting defendants are resolved. Any objection to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also FED. R. CIV. P. 72(b), 6(a), 6(d).

Respectfully submitted,

_____/s/_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      August 19, 2024